Good morning, counsel. Good morning, Your Honour. Please proceed. Good morning and may it please the court. My name is Shelly Richter and I represent Petitioner Melvin Hutspath. I'll reserve three minutes for rebuttal and I'll watch my clock. Thank you. The Fourth But trial counsel didn't. Trial counsel didn't recognize that the police violated two clear U.S. Supreme Court precedents, Riley v. California and Arizona v. Gantt, in seizing and searching his cell phone multiple times without a warrant. I'll focus on three main ideas today. Counsel, could I ask you, was Riley the law when the search was conducted? Riley was issued a few months after Gantt governed his trial. I was just curious because you said he violated Riley, and I just wanted to make sure that Riley had not been decided at the time of the search. Correct. A few months later. So I'll focus on three main ideas. Do you think that even if Riley was not the applicable rule and people v. Diaz was in fact the right case to be looking at, do you still prevail under Diaz? Yes, we do because Diaz is a search incident to arrest case where the cell phone was found on the arrestee's person. So that's different than what happened in Riley. There wasn't a valid search incident to arrest here. Of course, Mr. Hudspeth's phone wasn't found on his person, which is what happened in Diaz. It was in his car. At the time that the police retrieved the phone from his car, Melvin Hudspeth was in a police vehicle, so he was restrained. So the court should apply the search incident to arrest test in Arizona v. Gantt. Under that test, the court would look at first was Melvin Hudspeth was in reaching distance of the vehicle. He was not. Second, was it reasonable to think that there was evidence of the offense of arrest in Melvin Hudspeth's car? Again, there was not. Deputy Juarez was extremely clear about what he arrested Mr. Hudspeth for. He arrested him for outstanding warrants for a grand larceny auto. So it wouldn't have been reasonable for Deputy Juarez to think he can go into Melvin Hudspeth's car and find evidence of this past crime. Why wouldn't a car contain evidence of car theft? I mean, you could find the registration papers from the other car. You could find on the phone photos of him and the car that he stole. I mean, it seems like there's all kinds of evidence of car theft that you could find by searching a car, isn't there? There's no particularized record of it being plausible that such evidence would be found in this car. Deputy Juarez had information that Melvin Hudspeth was driving his own car, which he got from Denia Belton. There isn't information about what this outstanding warrant was for or what sort of evidence might be found for it. And the state has never argued that such evidence would be found in the car. So it just would not be reasonable to think that he would be able to get such evidence. But the so that may be right. But the the Fourth Amendment test is and the good faith analysis is objective, right? What matters is not. Isn't it true that what matters is not what the officers subjectively thought? It's what what there was a good faith objective basis for him to do. Yes, under Davis, it is an objective test, but it also requires a high degree of specificity. There needs to be binding appellate precedent specifically authorizing the police to act as they did. OK, so where I'm going with this question is even if Officer Juarez thought that he was arresting Mr. Hudspeth for the car offense, if he had objectively probable cause to arrest him for the child pornography offense, then, you know, I take it you disagree with that part. But but if we if we accept that part, it is surely reasonable to think that there would be evidence of that on the phone when he had been told the phone was where the videos were, right? If Mr. Hudspeth had been actually arrested for possession of child pornography, it would be reasonable to think that that would be in his car. But Mr. Hudspeth wasn't arrested for that offense. Was there probable cause at that point to suspect him of child porn? No, Your Honor. At most, there was reasonable substition under this court's opinion in Hopkins. A witness's report without any investigation on that report is generally not enough to support probable cause. And here, Deputy Juarez's follow up to Denia Belton's report is to reach into Melvin Hudspeth's car to take his phone out, to open his phone to look at the data and then to provide it to another officer who did the same thing the next day. And they did, in fact, later obtain a search warrant, correct? Yes. After Detective Stafford had viewed all the videos on the phone in order to, according to him, determine if there was stuff on there he needed to get off. That's when he applied for a broad search warrant. And do you think under Hopkins, do you read Hopkins as establishing the proposition that no report from a witness can ever be enough to establish probable cause? No, Your Honor. I think if there is a really high degree of credibility from the witness that can, in some instances, support probable cause. But that's not the situation here. Why wasn't there a high degree of credibility in this case? Deputy Juarez didn't know much about Denia Belton. He didn't know her relationship to Melvin Hudspeth. He didn't know why she was calling the police. There could be any reason why she was making this report, including it being a false report. So it would have required him to do a little bit more. And one thing he could have easily done was just to ask her, did anyone else see these videos? She would have said, yes, Damon James did. And Damon James was there and he could have followed up. So there were easy paths that he could have done to investigate, to report a little bit more before reaching into Melvin Hudspeth's phone, into his car to get his phone while the man was restrained in a police car. So I was a little bit confused by the officer's testimony on this point. So maybe you can correct me. I understood that the police department had received two different calls about the phone and the videos. Is that correct? Yes, Your Honor. There was a call placed from Las Vegas, but the testimony about the Las Vegas call is extremely vague. It's the reporter said something about videos being on a phone. So it's really not clear what the person in Las Vegas said. Do we know who that person was? It doesn't say, but presumably it's R.H.'s mother. Okay. Well, so right there, isn't that something different from the Hopkins situation? You don't just have one witness with no corroboration. You have two different witnesses who have called to say more or less the same thing. I mean, maybe if the Las Vegas reporter had been a lot more specific, that would place it in a different situation. But again, I want to stress that under Arizona versus Gantt, the court looks at the offense of arrest and the offense of arrest here were those outstanding warrants. It wasn't possession of child pornography. Deputy Wars was very specific about what it was for, and that's also supported in the declaration of search warrant that's filed later. So the record is clear that what the offense of arrest was, and that's a really critical part of Gantt. Gantt repeats that language multiple times, and Gantt gets that offense of arrest language from Justice Scalia's concurrence in Thornton, which looks at 19th century resources. So this is a long line of authority that really centers the inquiry on the offense of arrest. But if what we're looking at now is the sort of objective good faith under Davis, isn't what matters, what there was an objective basis for the arrest for not, I mean, not what Juarez thought subjectively that he was arresting him for. But Deputy Wars did objectively arrest him for the outstanding warrant because he did that he developed probable cause, according to. Well, I mean, that's that's derivative of your argument that I mean, I understand your argument that there wasn't probable cause. But if if we if we don't agree with that, if we think that there was probable cause from the two different phone calls from Danea saying to the officer, you know, that's him, then then the analysis is different, isn't it? Deputy Wars first arrested Mr. Hesbeth before he spoke to at length. So the first thing he did was when he spoke to Mr. Hesbeth is he got his information, right, his name, his date of birth. He ran his information and then he arrested him. And only once Mr. Hesbeth was already under arrest, did he start talking to Danea Belton. So it's not about him having an objective basis to arrest him for something else. The facts clearly show what he was arrested for, because that was the first thing Deputy Wars did. Can I just note that your your time appears to have frozen? Actually, it looks like it reversed. It was. Oh, it was. I thought it was seven something minutes. And now you're here all day. Should I keep going? Okay. So the trial counsel. Go ahead. The trial counsel was unreasonable for not raising this motion to suppress. It had a potentially great benefit to him and trial counsel did not think through the law or the facts that would have supported the motion. Any defense attorney would seek to exclude evidence that forms such a central part of the state's case. And three moments in the First, after the great after the jury raised the issue, counsel showed that he did not know the legal or factual basis of the search. He said something like, obviously, the deputy knows a lot in California, which undermines counsel's role to subject the state's state's case to adversarial testing. He should have known what the basis of the search was legally and factually, and he didn't. And the way that this was represented as a search incident to arrest under Diaz, that should have set alarm bells going in trial counsel's mind because there wasn't a valid search incident to arrest here. Then at the post trial hearing, counsel again was asked about this because Melvin Hudson himself brought up to the court that he asked trial counsel to file a motion to suppress and counsel did not. And counsel said that was because the phone was in plain view in the car. Of course, the plain view doctrine under Horton would not have allowed the seizure and the search that happened here. The officer did not have a lawful right of access to the phone. He didn't have a lawful right of access to the data. The plain view doctrine is simply inapplicable. And maybe the best evidence of deficient performance is the fact that trial counsel eventually became appellate counsel. And when he became appellate counsel, the first issue that he raised was plain error to admit the cell phone evidence. He devoted the most space to it in his appellate brief, and it was placed number one in the brief. So clearly, once trial counsel thought about the issue, he realized that it had potential merit and that it should be brought to the court's attention. The case for prejudice was also overwhelming here. The evidence for the charges were the videos, and that can be seen by looking at the prosecutor's closing argument and just as a matter of common sense. The prosecutor tied every single charge against Mr. Hutzpath to a video. All of the sex assault, all the lewdness charges, all the possession charges, all to a video with one exception, which is count seven. That was a lewdness charge that was not on video. And so what do we do with the victim's testimony? Even if the video evidence were excluded, why wouldn't there be a lack of prejudice because of the testimony from the victim as bolstered by the other testimony investigator and others who corroborated her testimony? There would not be prejudice because with that one count, count seven, not supported by a video, that's where the jury acquitted. So when the jury had to rely only on R.H.'s testimony, the jury had such doubts that it not only did it reach a mistrial, it actually acquitted. Did R.H. testify as to being photographed and videotaped? No, she did not. Her testimony doesn't even provide sufficient evidence for these charges, especially not the possession ones, but most of the sex assault and lewdness ones as well. She also testified for all of 17 pages. It was not a robust testimony. It was contradictory, inconsistent, at times false. But truly, the prosecutor's closing argument is the best way to see the prejudice that this caused. Counsel, are you seeking a new trial? Yes, we are. We're seeking the writ be granted so that he can have a new trial. Okay, if there are no further questions, I'll reserve the rest of the time for rebuttal. All right, thank you. Thank you. Good morning, Your Honors. My name is Jerry Lynn Hardcastle. I'm a Deputy Attorney General for the State of Nevada, and I represent the respondents. Respondents respectfully request that this court affirm because Hudspeth has not met the high burden in Strickland v. Washington to prove that counsel performed deficiently or that he was prejudiced. To prevail, Hudspeth must show that the trial court would have granted his motion to suppress and a reasonable likelihood of a different verdict without the evidence of the videos and photographs. He fails to do so. Can I just ask you to clarify something you said in the footnote in your brief? You're not asking us to apply HEDPA deference to the state court's determination? We're just supposed to look at Strickland and decide whether he's satisfied the Strickland test? Yes, Your Honor. Yes. I would like to begin where this court left off with Ms. Richter, which is by focusing on prejudice. The prosecution did submit sufficient evidence to convict Mr. Hudspeth of the charges, even without the videos and photographs. But sufficient evidence in the, I mean, it may be sufficient in the Jackson v. Virginia test for that sense, but that's not really the test for prejudice. Prejudice is, is there some reasonable probability of a different that there may have been a different argument? But what do you say with respect to the fact that R.H. did not testify as to any being photographed or videotaped? So even if the cell phone photos and videos were excluded, how could the jury have still convicted him but for the evidence that came in from the cell phone if there was no R.H. or any direct testimony? Wouldn't Nevada's best evidence rule bar all of the other statements from the individuals? No, Your Honor, it would not have. Under Ross v. State, a Nevada case, the court can allow evidence of videos and photographs when those videos are unavailable. And so because of that, and because Denia's testimony and Damon's testimony were crucial to the narrative of this case, that evidence would have come, the trial court would have allowed that evidence. The videos and photos certainly were not available to Denia Belton. She couldn't have seized the phone without being convicted of theft. And therefore, if the videos had been excluded, Denia's testimony was certainly sufficient to, to sustain, what shows that there's no reasonable likelihood of a different outcome. But there were, what was it, 15 different separate counts based on the separate videos? Is that right? Based on the videos? I thought there were separate counts based on separate videos or separate acts. There were separate counts based on videos for the possession and for the production, use of a child in the production. There were eight counts. Eight, okay. The remaining counts were for the sexual assault and the lewdness charges. But for those eight, you really think there's no reasonable probability that, I mean, it's one thing when you can see the eight video, when you, the jury, can see the eight videos and say, okay, that's eight videos. It's another to have, you know, this sort of testimony, well, you know, I saw some videos, but like to link that up to the specific counts, you really think there's, there isn't some reasonable chance that the jury would have, you know, entertained some doubts about that if all it had was secondhand reports from somebody who had seen the video? Yes, Your Honor. I do believe that, that there's no reasonable likelihood of a different outcome. There's no reason to believe that the jury would not have believed Denia's, Denia Belton's testimony. And she testified that videos were made? She testified that she saw four or five videos. She testified that she saw, or that she could hear Mr. Hudspeth's voice in some of the videos. She also testified that she recognized his distinctive belly button in other videos. She also recognized the victim in the videos. And so, yes, with that detail and with that testimony, there's no reasonable likelihood of a different outcome. Additionally, the fact that Ms. Belton contacted the victim's mother and told the victim's mother that she had seen these videos and asked if the child had this type of a t-shirt, the mother confirmed that she did. It's, that testimony is credible and the jury would not likely have reached a different verdict. Did you say a moment ago that she said she had seen four or five of the videos? She saw, she said she saw four or five videos. Okay, but there were, there were eight separate video accounts. Right. So how does her, how does her testimony? Four for possession and four for use of a child in production of the videos. So it's not that those are separate videos. Okay. They're, they're the four videos and two different charges relating to each video. Additionally, Deputy Juarez testified that during a police interview, Hudspeth admitted that the telephone was his. That is sufficient to sustain the multiple convictions for possession of child pornography and using a child in the production of child pornography. Additionally, the victim testified to different acts testifying, and I'll spare the graphic details, but about touching, about oral sex and such. And Detective DeCaro test, the forensic interviewer or the forensic detective who interviewed the victim testified as to what the victim had said during that interview, where the victim would likely have been much more comfortable in expressing herself and explaining the details of the, of the sexual abuse of Mr. Hudspeth's crimes. So you, you, you've made the argument in your brief that the search could be defended on, you know, good faith under the then prevailing California interpretation of Gantt, that it extended to a, extended to a cell phone in a car. Your friend on the other side says you can't invoke Gantt because the offense of arrest was this auto theft, not the child pornography. What's your answer to that? Well, first of all, I agree with your honor that proof of grand larceny auto could have been found in the vehicle. There was a reason, it was reasonable for Mr., or for Deputy Juarez to suspect that. Also, to say that Hudspeth was not also under arrest for the possession of child pornography videos is naive, even though. Does that timing matter as your friend on the other side described? Officer Juarez did not speak to Dinea about what she had seen until after the arrest was made for the warrant. But that factual assertion is belied by the record. At 6 ER 968, Deputy Juarez testified that he separated, he separated Hudspeth from the others and then spoke to Dinea and then subsequently arrested Mr. Hudspeth. And what do you say about the, the sort of distinction in Gantt about whether or not the defendant is within an arm's reach or reaching distance of the vehicle, which in this case was not the case. So, so Hudspeth was not near the car. Do we, do we consider that at all for purposes of applying Gantt? But that was dictum. The actual holding, as I read Gantt, is whether the officer reasonably believes there or has probable cause to believe that there is evidence for the crime of arrest. So no, he was not in reaching distance. He was, I mean, it's, that's indisputable. And it's also indisputable that he could not have reached into his vehicle at that time. But that is not the precise standard that Gantt sets. Can you give me the citation to the record again that you indicated that, that contradicts the timing that Ms. Richter described? Yes, it's 6 ER 968. Okay, and, and going to deficient performance, unless this court has any other questions about prejudice, Mr. Hudspeth has not met his burden to show that counsel performed deficiently. Mr. Hudspeth has shown that the search may have been correct, incorrect under Diaz. He has also asserted that the search may have been incorrect. Well, he asserted that the search was incorrect under Arizona versus Gantt. And even giving that is true, he's just shown that under those standards, the search was improper. But he hasn't shown that there was no other case law upon which Deputy Juarez relied in order to search that vehicle. As, as my friend on the other side stated, the record is not clear about the case that upon which Deputy Juarez relied. The record does not explain that. Now, granted in the state's opening brief on direct appeal, the state argued Diaz, but the record does not show that that is what the deputy relied upon. And Mr. Hudspeth has not shown that there might, has not shown that there was no other exception upon which Deputy Juarez could have relied. Therefore, it was reasonable for the, for counsel to, to decline to file a motion to just, to suppress. That counsel raised the issue on direct appeal doesn't show that counsel then realized it. It showed that on direct appeal, counsel was looking at anything that he could do. In order to find a way in which to reverse the convictions. And so that's what he argued. But again, that does not show that California did not have a law that would have allowed the search. Therefore, Mr. Hudspeth has not met Strickland's high bar. And that is a, there is a high bar for relief on an IAC claim. I mean, Mr. Hudspeth needs to show an extreme malfunction in the state court proceedings. But because he hasn't satisfied his burden of deficient performance, nor has he satisfied his burden for prejudice, it shows that habeas relief is not warranted. Just as the lower court found. Unless your honors have any further questions. I have nothing further. Thank you, counsel. Thank you. Rebuttal. Thank you, your honors. A few points on rebuttal. First, I'll start with the portion of the record that Ms. Hardcastle pointed to. That's 6 ER 968 to 969. That actually supports the timeline that I previously laid out. His testimony by Deputy Juarez saying he asked Melvin Hudspeth for his identification. After it was provided, he says he was able to separate Melvin Hudspeth. And then he's asked if he started speaking to people. He says, yes. Who did you speak to first? He says, Denia. And then he says, she basically said she was going through the defendant's cell phone and had located some videos of a child performing sex acts on an adult. So first, he did separate Melvin Hudspeth. I think that's his way of saying I arrested him because he's trying not to get into bad acts and things like that. And then he spoke to Denia Belton. So the record does support that timeline. And second. But when did the search take place? The search didn't take place until after he had spoken to her. Is that right? Exactly. After he got that information, that detailed information from Miss Belton, that's when he went outside and took the phone out of the car. And so if in some counterfactual, if he had said at that point, OK, I'm now going to arrest him for the child pornography offense, having having already arrested him on the warrant, I am now arresting you on the child pornography offense. Then under under Gant, can he search the car and look at the phone? Perhaps, especially if he had complied with California law in terms of the requirements for effectuating an arrest. And if he had probable cause, then that would be a different situation. And so but then going back to the sort of Davis subjective nature of this, assuming and I realize for you, you may disagree that that this is true, but assuming that there was an objectively reasonable basis for him to do that at that point, that he had a probable cause, then why does it matter that he hadn't fully thought it through and realize that that could be the basis for the search that he was conducting? Isn't it enough that the objective basis was present? No, your honor, there needs to be an actual arrest under Knowles. That's a Supreme Court case for the search incident to arrest doctrine to be implicated. There must be an actual arrest. Let me just get that case site. Quickly, Knowles versus Iowa from 1998. I would also point the court to United States versus Davis. That's a Fourth Circuit decision from twenty twenty one nine nine seven F3D one ninety one where they look at how important it is. The actual offense of arrest is versus the office officers suspicions of other offenses. And I see my time has concluded. If there are no further questions, I would ask the court to grant the writ or remand for a hearing. Thank you. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case is argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, DESAI